## JEFFREY VAN NESSE *v.* DONALD TOMASZEWSKI
## (SC 16902)

Sullivan, C. J., and Borden, Norcott, Palmer and Zarella, Js.

Argued February 19—officially released September 2, 2003

*Michael J. O'Sullivan*, for the appellant (defendant).

*James P. Brennan*, for the appellee (plaintiff).

*Opinion*

BORDEN, J. The plaintiff, an employee of a subcontractor, brought an action against the defendant general contractor based on the defendant's negligence. The defendant appeals[1] from the judgment of the trial court, following a jury trial, in favor of the plaintiff. The defendant claims that: (1) there was insufficient evidence of his control of the worksite to support the verdict; and (2) the amount of the verdict was contrary to law and, therefore, should have been reduced or set aside. We affirm the judgment of the trial court.

The plaintiff, Jeffrey Van Nesse, brought this negligence action against the defendant, Donald Tomaszewski, for injuries the plaintiff had incurred while he was working as an employee of the framing subcontractor, Lemieux Carpentry, on a house that the defendant was building for the owners of the property. Following a jury trial, the jury initially returned a verdict for the plaintiff that the trial court did not accept because the verdict included an amount of economic damages[2] that

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 52-572h (a) describes the general distinction between economic and noneconomic damages, providing in relevant part: "(1) 'Economic damages' means compensation determined by the trier of fact for pecuniary losses including, but not limited to, the cost of reasonable and necessary medical care, rehabilitative services, custodial care and loss of earnings or earning capacity excluding any noneconomic damages; (2) 'non-

exceeded the amount in the parties' stipulation. After the court reinstructed the jury, the jury returned a verdict that the court accepted. The court then denied the defendant's motions to set aside the verdict, for remittitur and for judgment notwithstanding the verdict, and rendered judgment in accordance with the verdict. This appeal followed.

The jury reasonably could have found the following facts. In November, 1996, the defendant was a general contractor who had contracted to build a house for the owners of property located in Burlington. The defendant had subcontracted the framing of the house to Lemieux Carpentry, of which the plaintiff was an employee. On November 17, 1996, the plaintiff and his framing coworkers were working on the roofline, when the plaintiff dropped his tape measure, which fell down through the second and first floors of the house, through an opening that had been left in the plywood covering the first floor, and ultimately dropped into the basement. A ladder, which was owned by Lemieux Carpentry, had been placed in the opening leading to the basement, which had a concrete floor. Because that particular ladder had a broken foot, it ordinarily was used only outside the house, where the broken foot could be secured in the soil for safety. Nonetheless, the ladder had been placed in the opening to the basement, and the feet were situated in a large accumulation of sawdust that had been swept from the first floor through the opening to the basement's concrete floor, rendering the ladder's footing insecure, particularly given the broken foot of the ladder. The plaintiff went down the ladder to retrieve his tape measure and, while he was climbing back up the ladder, it slid out from under him, causing him to fall to the floor and suffer serious

economic damages' means compensation determined by the trier of fact for all nonpecuniary losses including, but not limited to, physical pain and suffering and mental and emotional suffering . . . ."

injuries.[3] Further facts and evidence will be stated where relevant.

The parties had stipulated that the plaintiff's medical bills totaled $5384.61, and that his lost wages totaled $11,250,[4] for total economic damages of $16,634.61. The jury initially returned a verdict finding that each party was 50 percent responsible, and awarding the plaintiff a total amount of $149,887.70, which was calculated as follows: economic damages, $87,775.40; noneconomic damages, $212,000; total damages, $299,775.40, multiplied by 50 percent, for the amount of $149,887.70. In addition, the jury answered three specific interrogatories, finding that: (1) the defendant did not have "employees who were working at the job site"; (2) "the defendant made inspections of the area where the accident occurred"; and (3) "the area where the accident occurred was open and available to various and different people."

Because the amount of economic damages was contrary to the stipulation, the trial court declined to accept the verdict. The court then reinstructed the jury on the issue of economic damages, reminding the jury of the parties' stipulation as to the amount of those damages. Accordingly, the court "ask[ed the jury] . . . to go back and reconsider [its] verdict in light of the court's reinstructions on [the issue of economic damages]," and returned the jury "to the jury deliberation room where [it would] have the exhibits as well as [the] verdict form." The court further "ask[ed the jury] to complete the verdict form and sign it in a way that [it had] instructed [the jury]" previously. Thereafter, the jury returned with a verdict for the plaintiff, again finding

---

[3] Among other injuries, the plaintiff suffered a spinal fracture, specifically, a compression fracture of the first lumbar vertebral body.

[4] Although the defendant stipulated that these were the accurate amounts proven by the plaintiff, the defendant did not agree that he was responsible for them.

both parties' equally responsible, and awarding the plaintiff a total amount of damages of $149,817.31, which was calculated as follows: economic damages, $16,634.61; noneconomic damages, $283,000; total damages, $299,634.61, multiplied by 50 percent, for the amount of $149,817.31. The court accepted the verdict and, after denying the defendant's motions, rendered judgment accordingly.

The defendant first claims that there was insufficient evidence that he was in control of the area of the defective condition that caused the plaintiff's injuries and, therefore, that the court should have granted his motion for judgment notwithstanding the verdict. Specifically, the defendant contends that, in order for "the jury to find against the defendant, it had to decide that either the defendant or his employees placed the ladder in the opening or that the defendant was charged with the responsibility to discover the alleged defective condition and remedy the condition." We disagree.

We recently have reaffirmed the rule that, although ordinarily a general contractor is not responsible for the torts of its independent subcontractors, one of the exceptions to that rule of nonliability applies where the general contractor retains or assumes control of the work involved. *Pelletier* v. *Sordoni/Skanska Construction Co.*, 264 Conn. 509, 518, 825 A.2d 90 (2003). "Where the evidence on the question as to who had control of the area or instrumentality causing the injury is such that the mind of a fair and reasonable man could reach but one conclusion as to the identity of the person exercising control, the question is one for the court, but, if honest and reasonable men could fairly reach different conclusions on the question, the issue should properly go to the jury." *Wright* v. *Coe & Anderson, Inc.*, 156 Conn. 145, 151, 239 A.2d 493 (1968). In addition, the contractor's control need not be exclusive; it is sufficient if it be shared with another. Id., 154. We con-

clude that there was sufficient evidence for the issue of control to go to the jury.

The trial court submitted the question of control to the jury in terms of who had control of: (1) the opening in the floor into which the ladder had been placed; (2) the basement floor; and (3) the ladder itself. The defendant does not take issue with the instruction regarding the area or instrumentality causing the injury. The following evidence, taken in the plaintiff's favor, supports the jury's determination that the defendant had such control sufficient to render him liable.

The defendant's contract with the owners of the property charged him with the responsibility of keeping the property free from rubbish and waste during construction. At the time of the accident, the ladder was the only means of ingress and egress to the basement. The framing subcontractor's work in the basement essentially had been completed for approximately two weeks, except for the possible need to "double a joist" in the basement that might have been overlooked. Other tradesmen and the town building inspector had access to and reason to be in the basement in the days immediately prior to the accident. In addition, the defendant inspected the premises daily. Finally, there was evidence from which the jury could have inferred that the defendant, or one of his employees, had swept the sawdust into the basement that rendered the footing of the ladder particularly unsafe. Thus, there was evidence from which the jury reasonably could have inferred that: (1) on the day in question, the defendant had not fully relinquished control of the basement area, including the floor, to any particular subcontractor; (2) the defendant continued to inspect the job on a regular basis, including the area in contention that included both the opening and the ladder; and (3) the defendant personally was responsible for the accumulation of saw-

dust on the basement floor that rendered the ladder particularly unsafe.

In support of the defendant's claim that he did not have a degree of control sufficient to render him liable, the defendant relies heavily on two undisputed facts: (1) the ladder in question was owned by the plaintiff's employer; and (2) the jury specifically found that the defendant had no employees on the job. Neither of these facts, however, establishes that, as a matter of law, the defendant had no control over the area or instrumentality that caused the accident.

The fact that Lemieux Carpentry indisputably owned the defective ladder is not decisive. The plaintiff's claim of negligence relied partly on the sweeping of sawdust into the basement, rendering the footing of the ladder particularly unsafe. The jury reasonably could have found the defendant personally responsible for that accumulation of sawdust. The same reasoning applies to the jury's finding regarding the employees of the defendant. It is true that the plaintiff sought to prove that there were two such employees, who were responsible for the errant sweeping of the sawdust, that the defendant denied that he had any employees on the job, and that the jury specifically found that he had no employees on the job. This finding by the jury does not necessarily absolve the defendant, however, in light of the evidence supporting the jury's determination that the defendant performed the errant sweeping.

The defendant next claims that the trial court was obliged to set aside or reduce the amount of the verdict because of the jury's change in its award of noneconomic damages. Specifically, the defendant argues that it is obvious that, when the trial court returned the case to the jury to reconsider its award of economic damages, the jury disregarded the court's instructions by simply increasing the amount of the noneconomic

damages by substantially the same amount by which the jury was required to decrease the award of economic damages. We conclude that the court was within its discretion in accepting the verdict as ultimately rendered.

"The supervision which a presiding judge has over a verdict which may be rendered is an essential part of the jury system, and that supervision tends to make jurors more careful in reaching their conclusions. *Cables* v. *Bristol Water Co.*, 86 Conn. 223, 224, 84 A. 928 [1912]. The control of the court over the verdict of the jury is limited but salutary. *Gillette* v. *Schroeder*, 133 Conn. 682, 686, 54 A.2d 498 [1947]. General Statutes § 52-223,[5] which permits the court to return a jury to consider their verdict, appropriately employed, is a salutary and effective method of exercising judicial supervision over a verdict which may be rendered by a jury. The practice of returning the jury for further consideration has been followed since *Russell* v. *Bradley*, 4 Day [Conn.] 403, 406 [1810], by the authority of § 52-223 and its predecessors. See *Gillette* v. *Schroeder*, supra [686]; *Marini* v. *Wynn*, 128 Conn. 53, 56, 20 A.2d 400 [1941]. The exercise of the court's power under § 52-223 in returning the jury to reconsider their verdict is not conditioned on the verdict being so unreasonable that, if accepted, it would have to be set aside. *Ryan* v. *Scanlon*, 117 Conn. 428, 436, 168 A. 17 [1933]." (Internal quotation marks omitted.) *Cruz* v. *Drezek*, 175 Conn. 230, 241–42, 397 A.2d 1335 (1978).

Although, when the court returned the case to the jury, it did so only with instructions to reconsider the

[5] General Statutes § 52-223 provides: "The court may, if it judges the jury has mistaken the evidence in the action and has brought in a verdict contrary to the evidence, or has brought in a verdict contrary to the direction of the court in a matter of law, return them to a second consideration, and for the same reason may return them to a third consideration. The jury shall not be returned for further consideration after a third consideration."

amount of the economic damages, under our case law that did not confine the jury, in rendering its verdict, to repeating its initial determination on the noneconomic portion of its award. It is implicit in the notion that a court has the discretion to decline to accept a jury's verdict, that until a verdict is accepted, there is no valid verdict. *State* v. *Avcollie*, 174 Conn. 100, 104, 384 A.2d 315 (1977). Thus, until the jury rendered a verdict that the court accepted, the jury was free to change its award regarding the award of noneconomic damages.

In *Towhill* v. *Kane*, 147 Conn. 191, 192, 158 A.2d 251 (1960), the jury returned a verdict in favor of all three plaintiffs against the defendant. The court returned the case to the jury to consider whether the award in favor of one of the plaintiffs, namely, the operator of the motor vehicle involved, was "excessively liberal." (Internal quotation marks omitted.) Id. Upon reconsideration, the jury returned a verdict in favor of the other two plaintiffs, and in favor of the defendant as to the operator, and the court accepted this verdict. Id. On appeal, this court stated that there was "no merit in the claim . . . that the jury, upon reconsideration, were powerless to change their verdicts on the issue of liability." Id., 194. A fortiori, the jury in the present case was within its power to change the amount of the noneconomic damages awarded to the plaintiff, and the court did not abuse its discretion in accepting the verdict as rendered.

The judgment is affirmed.

In this opinion the other justices concurred.