******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KLEBER GONZALO LOJA LASSO, ADMINISTRATOR
(ESTATE OF LUIS ALBARO ORTEGA ORTEGA),
ET AL. *v.* VALLEY TREE AND
LANDSCAPING, LLC, ET AL.
(AC 43813)

Bright, C. J., and Alvord and Harper, Js.

*Syllabus*

The plaintiffs, the administrator of the estate of the decedent, O, and O's wife, C, sought to recover damages from the defendant G Co., a construction manager, for the wrongful death of O and for loss of consortium on behalf of C, in connection with the death of O as he was using an excavator to remove trees from certain premises. G Co. had been awarded a contract with the borough of Naugatuck for a project to renovate a high school. Subsequently, the building committee for the borough determined that additional borough funds could be used to remove trees near an upper parking lot that were adjacent to, but not a part of, the grounds where the high school renovation project was taking place. At the request of the building committee, G Co.'s project director solicited bids from two companies and went to the site to point out trees that were flagged for removal by the building committee. The building committee then voted to award the tree removal work to the defendant V Co. O was an employee of V Co. The trial court granted G Co.'s motion for summary judgment as to the plaintiffs' claims, finding that there was no genuine issue of material fact that G Co. was not contractually obligated to have the control or responsibility for the supplemental work of overseeing any separate contractors, including V Co., and that there was no genuine issue of material fact that G Co. did not owe a duty to V Co. or its employees for the safety issues alleged in the complaint, and thus, did not owe a duty of care to O. *Held* that the trial court's determination that the provisions of the contract between G Co. and the borough did not give rise to a duty owed by G Co. to V Co. and its employees was legally and logically correct and supported by the language of the contract: the contract language was clear and unambiguous in the description of the project area, the extent of the project, and the work for which G Co. had the duty to perform, the court correctly determined that the plaintiffs, in their opposition to the motion for summary judgment, did not submit any admissible evidence demonstrating that G Co.'s responsibilities under the contract extended to the tree removal work, the plaintiffs' reliance on the representations made by G Co. in its bid, which was incorporated into the contract, was misplaced, as those representations related to G Co.'s responsibilities for work done within the area included for the renovation project, the tree removal work occurred in an area that was not within the scope of the project covered by the contract and the contractual language did not designate the tree removal work as part of G Co.'s management duties; moreover, the plaintiffs could not prevail on their alternative claim that G Co., through its actions, assumed a voluntary duty of care to O, and that its actions gave rise to a common-law duty to ensure safe workplace practices, as the plaintiffs failed to present any evidence of conduct on the part of G Co. demonstrating that it was in charge of the project to remove the trees or in any way directed the activities of the employees of V Co.; furthermore, C's loss of consortium claim necessarily failed because it was derivative of the negligence claim on which the court properly rendered summary judgment.

Argued October 4, 2021—officially released January 4, 2022

*Procedural History*

Action to recover damages for the wrongful death of the named plaintiff's decedent as a result of the defendants' alleged negligence, and for other relief, brought to the Superior Court in the judicial district

of Waterbury, where the court, *Brazzel-Massaro, J.*, granted the motion for summary judgment filed by the defendant O & G Industries, Inc., from which the plaintiffs appealed to this court. *Affirmed.*

*Jeffrey I. Carton*, for the appellants (plaintiffs).

*Michael S. Lynch*, with whom, on the brief, was *Nicole A. Carnemolla*, for the appellee (defendant O & G Industries, Inc.).

*Opinion*

HARPER, J. The plaintiffs, Kleber Gonzalo Loja Lasso, as administrator of the estate of the decedent, Luis Albaro Ortega Ortega (Ortega), and Marcia Del Lourdes Gualan Coronel (Coronel), appeal from the judgment of the trial court granting the motion of the defendant O & G Industries, Inc. (O & G), for summary judgment as to counts four and five of the revised complaint, which alleged claims against O & G for the wrongful death of Ortega pursuant to General Statutes § 52-555 and for loss of consortium on behalf of Coronel, who was married to Ortega at the time of his death.[1] On appeal, the plaintiffs claim that the court improperly granted the motion for summary judgment filed by O & G because (1) issues of material fact existed concerning O & G's responsibility for ensuring safe workplace practices with respect to certain tree removal work performed by the defendant Valley Tree and Landscaping, LLC (Valley Tree), and (2) the court erred in failing to find, pursuant to a construction contract between O & G and the borough of Naugatuck (borough), that O & G owed a duty of care to Valley Tree and, hence, to Ortega. The plaintiffs also claim that the court improperly rendered summary judgment as to Coronel's loss of consortium claim against O & G, which was derivative of the negligence claim against O & G. We disagree and affirm the judgment of the trial court.

The record before the court, viewed in the light most favorable to the plaintiffs, reveals the following relevant facts and procedural history. In 2011, O & G was awarded a contract with the borough to act as construction manager for a project to renovate Naugatuck High School in 2012 (renovation project). In 2015, the building committee for the borough determined that additional borough funds could be used to remove trees near an upper parking lot for aesthetic purposes and to improve the viewing of fields for sporting events. The parking lot and trees to be removed were adjacent to, but not a part of, Naugatuck High School grounds where the renovation project was taking place. Two members of the building committee viewed the site to determine which trees to remove, and those trees were flagged by the building committee members. At the request of the building committee, Joseph Vetro, O & G's project director, solicited bids from two companies and went to the site with representatives from those companies in order to point out the trees that were flagged for removal by the building committee. After the bids were submitted, the building committee voted to award the tree removal work to Valley Tree, issued a purchase order to Valley Tree for the tree removal work and sent an e-mail to the owner of Valley Tree accepting its bid. On December 16, 2015, Ortega was working for Valley Tree operating a mini excavator to remove trees from the upper parking lot area. The mini

excavator had no door and there was no glass in the front and right-hand side windows. While performing that work, Ortega stood up to remove some branches near the right side window when the boom arm of the mini excavator suddenly came down, crushing him. He died as a result of the significant internal injuries he sustained in the accident.

In their revised complaint, the plaintiffs alleged in count four that "[t]he mini excavator operated by Ortega was in a dangerous and defective condition in that it was missing several protective window enclosures that were designed not to open, thereby preventing its operator, including Ortega, from accessing any area where the operator may come into contact with the boom arms of the mini excavator." The revised complaint further alleged that the protective window enclosures had been missing from the mini excavator for approximately one month prior to Ortega's accident and that, as a result, it was operated by Valley Tree in a hazardous condition. The revised complaint also alleged that O & G, in its role as construction manager, "oversaw the entire renovation project," and that, "[b]ecause of its role as construction manager, O & G had numerous duties, which include[d], but [were] not . . . limited to, the following: managing the construction; coordinating the construction; conducting daily or other periodic inspections of the renovation site to monitor conditions at the site; ensuring that the construction at the site was performed in a safe and proper manner; ensuring that contractors at the site performed their work in compliance with federal and/or Connecticut workplace safety standards and regulations; obtaining satisfactory performance from contractors at the site; notifying the owner of the property of any hazardous or dangerous conditions; assisting the owner of the property in arranging for contractors to actually perform the construction work; ensuring that contractors at the site are coordinated; monitoring the field activities of each contractor at the site; and recommending courses of action to the owner of the property with respect to failures in the performance of the contractors at the site."

According to the allegations of count four of the revised complaint, O & G was negligent, inter alia, in failing (1) "to prevent Ortega from operating the mini excavator that was in a hazardous condition," (2) "to observe and detect that Valley Tree was performing its work in an unsafe and hazardous manner" and to stop Valley Tree from doing so, (3) to monitor the construction site and to secure a safe workplace, and (4) to exercise reasonable care in fulfilling its duties as the construction manager for the project. In count five of the revised complaint, Coronel, based on the same allegations in count four, alleged a claim against O & G for loss of consortium.

On October 2, 2018, following the completion of discovery, O & G filed a motion for summary judgment as to counts four and five of the revised complaint, claiming that "[a] wrongful death claim based on negligence against O & G . . . [could not] be maintained as a matter of law since . . . O & G owed no duty to the plaintiffs," and that no genuine issues of material fact existed. Specifically, in its memorandum of law in support of its motion for summary judgment, O & G claimed that "[t]he scope of [its] duties and obligations as construction manager for the work performed on the [renovation] project [was] limited to those [duties and obligations] set forth in its contract with the borough," and that it had no independent duty or obligation to perform tasks or services for the project apart from the duties and obligations set forth in the contract, which was devoid of any reference to the tree removal work performed by Valley Tree in the upper parking lot adjacent to the high school grounds. Moreover, O & G asserted that "there [was] no change order or other amendment [to its contract with the borough] that ever brought such work within [its] contractual scope of work."

In further support of its claim that it owed no legal duty to Ortega, O & G argued that (1) "[i]t [was] undisputed that the borough directly hired Valley Tree to perform tree removal work in an area outside the contract limit line established in O & G's contract," (2) "O & G never exercised any dominion, rights or control over that area, nor did it ever contractually agree to oversee, direct, manage or supervise any of Valley Tree's work," and (3) "Valley Tree worked independently, utilizing its own equipment, machinery, manpower, and means and methods to perform the work contracted by the borough, completely outside O & G's scope of work." Finally, given its claim that the negligence count was insufficient as a matter of law, O & G argued that the loss of consortium claim, which was a derivative claim and not a separate cause of action, necessarily failed as well.

On December 17, 2018, the court, *Brazzel-Massaro, J.*, heard arguments on the motion for summary judgment. On January 9, 2020, the court issued a comprehensive memorandum of decision granting O & G's motion for summary judgment. In its decision, the court explained that "[t]he sole issue raised in opposition to the [motion for] summary judgment is whether the argument that the deposition testimony of various [borough] officials, the construction manager and the owner of Valley Tree, as well as the contract documents support a duty owed by O & G." In granting the motion for summary judgment, the court analyzed the contractual provisions, the actions of O & G in working on the renovation project, the deposition "testimony of the various officials of the [borough], the construction manager and the owner of Valley Tree . . . as to the imple-

mentation of the contractual provisions and the operation of the project by O & G," and "the circumstances surrounding the hiring of Valley Tree for removal of the trees, including the bidding, the award of the bid, and the actions thereafter in accordance with the contract."

The court ultimately concluded that "the plaintiffs have [presented] no evidence or testimony that would create a duty as to O & G or any of its employees because the facts demonstrate that there is no genuine issue of fact that (1) the area of the work by Valley Tree was not a part of the construction limit line defined for the contractual obligations of O & G; (2) the contract clearly defines and establishes the duties and responsibilities of O & G as the construction management group for the [renovation project]; (3) the tree removal work was not work included in the contract [to renovate] . . . Naugatuck High School; (4) O & G was not responsible to oversee the work of trade contractors who were not hired by them or for whom they did not enter into a change order with the borough or board of education and their representatives in accordance with the contract documents; (5) there were no change orders for any tree removal work or responsibilities entered into by O & G as part of the contract; (6) O & G did not amend the contract by its actions of following the request by the building committee and assisting them in walking the property with Valley Tree but [was] coordinating in accordance with the contract provisions; (7) the only coordination by O & G was the timing of the work by Valley Tree to fit within the timeline for completing the work and not interfering with the contractors doing work with O & G; and (8) the funding for the tree removal was not part of the budget under O & G's control that had been approved for the [renovation project]. The funds for the tree removal were from a separate account for supplemental work.

"Based upon the foregoing, there is no genuine issue of fact that O & G was not contractually obligated to have the control or responsibility for the supplemental work of overseeing any separate contractors, including Valley Tree, by change order or otherwise. Thus, there is no genuine issue of fact that . . . O & G has a duty to Valley Tree or [its] employees for the safety issues alleged in the complaint." From the summary judgment rendered in favor of O & G, the plaintiffs appealed. Additional facts and procedural history will be set forth as necessary.

Before we address the plaintiffs' claims on appeal, we set forth the relevant legal principles and our well settled standard of review of a court's ruling on a motion for summary judgment. "Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material [fact] which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) *Augustine* v. *CNAPS, LLC*, 199 Conn. App. 725, 728–29, 237 A.3d 60 (2020).

"[I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Internal quotation marks omitted.) Id., 733. "Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Cuozzo* v. *Orange*, 178 Conn. App. 647, 655, 176 A.3d 586 (2017), cert. denied, 328 Conn. 906, 177 A.3d 1159 (2018). "When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]." (Internal quotation marks omitted.) *Belevich* v. *Renaissance I, LLC*, 207 Conn. App. 119, 124, 261 A.3d 1 (2021).

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . Contained within the first element, duty, there are two distinct considerations. . . . First, it is necessary to determine the existence of a duty, and [second], if one is found, it is necessary to evaluate the scope of that duty. . . . The issue of whether a duty exists is a question of law . . . which is subject to plenary review. . . .

"Issues of negligence are ordinarily not susceptible of summary adjudication but should be resolved by trial in the ordinary manner. . . . Nevertheless, [t]he issue of whether a defendant owes a duty of care is an appropriate matter for summary judgment because the ques-

tion is one of law." (Citation omitted; internal quotation marks omitted.) *Goody* v. *Bedard*, 200 Conn. App. 621, 631, 241 A.3d 163 (2020). Moreover, "[a] duty to use care may arise from a contract . . . ." (Internal quotation marks omitted.) *Carrico* v. *Mill Rock Leasing, LLC*, 199 Conn. App. 252, 262, 235 A.3d 626 (2020).

In the present case, the court, in granting O & G's motion for summary judgment, examined the contractual provisions contained in the contract between O & G and the borough, and determined, on the basis of those provisions, that O & G did not owe a duty of care to Ortega. "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact [subject to the clearly erroneous standard of review] . . . [when] there is definitive contract language, the determination of what the parties intended by their . . . commitments is a question of law [over which our review is plenary]." (Internal quotation marks omitted.) *Alpha Beta Capital Partners, L.P.* v. *Pursuit Investment Management, LLC*, 193 Conn. App. 381, 403, 219 A.3d 801 (2019), cert. denied, 334 Conn. 911, 221 A.3d 446 (2020), and cert. denied, 334 Conn. 911, 221 A.3d 446 (2020). To the extent that the plaintiffs' claims on appeal are directed at the court's interpretation of the contract between O & G and the borough, "our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) Id.

We first address the plaintiffs' claim that the court improperly determined that the contract between O & G and the borough did not give rise to a legal duty owed by O & G to Valley Tree and its employees. According to the plaintiffs, the contract "created an obligation for O & G to supervise and control Valley Tree's work," and its express terms compelled "the conclusion that O & G owed Valley Tree and its employees a duty of care." We are not persuaded.

In its thorough and well reasoned decision, the court first examined in great detail the contractual provisions at issue in determining the duties of O & G under its contract with the borough. Its findings in connection therewith can be summarized as follows. There were two contractual documents that specified the parameters of the contract and the duties of O & G, which also contained provisions relating to safety, insurance and performance with respect to the renovation project. To determine the site for the work that was within the scope of the renovation project, the court also examined the site plan, which provided the footprint of the work for the renovation, as well as an outline of the property included within the project. The court explained that O & G "contends that the scope of the project which they were contracted to oversee as the construction management company did not include the

area" where the tree removal was to be performed, which O & G claimed was "outside of the construction limits." The plaintiffs, on the other hand, relied on a proposal[2] that was submitted by O & G in its bid for the renovation project as defining the duties of the construction manager. The court, however, concluded that "contrary to the plaintiffs' contentions [the proposal] not change the duties set forth in the contract."

As the court explained: "The testimony and evidence clearly demonstrate that the area included in the . . . project for which O & G was the construction manager is restricted to the area in the site drawings," which does not include the area near the upper parking lot where the tree removal was performed. Although the area where the trees were removed is owned by the borough, it was never considered part of the high school grounds, and, thus, "the tree removal work was scheduled for an area never within the project area noted by O & G and the borough. . . . The site plan does . . . outline the area to be renovated as part of the work that is managed by O & G. Nowhere on the plan is there a notation which includes the area for this tree removal as part of the work or project. Additionally, the contractual language, contrary to the plaintiffs' assertions, does not designate this work as part of the management duties of O & G."

With respect to the plaintiffs' claim that O & G, as the construction manager, was responsible for the safety of *all* contractors and subcontractors, the court found that the contract documents provide otherwise in that they "[reserve] the right [for the owner] to perform construction [and] operations related to the project with the owner's own forces, and to award separate contracts in connection with other portions of the project or other construction or operations on the site . . . ." (Internal quotation marks omitted.) On the basis of the contractual provisions, the court found that the parties "intended that there would be subcontractors outside of the work supervised by the construction manager and that would not be within the responsibility of O & G, but which may need to be 'coordinated' with the work that O & G did supervise. This interpretation is exactly the situation existing with the bid acceptance for the supplemental tree removal work by Valley Tree. Not only is this work not included within the scope of work defined in sections E and F of the [renovation] project, but the process of awarding the work to Valley Tree supports the position of O & G." The court, thus, found that "the borough could hire separate contractors as it did in this situation, and it would be responsible for supervising and directing the work, including jobsite safety." That determination was supported by the deposition testimony of the business manager for the borough, who controlled the expenditures, that "the removal of the trees was not tied into the work by O & G," that it "wasn't part of the original scope of the

project," that it "was added as an item to be part of the scope of the Naugatuck High School renovation project," and that it "was under the borough's project." (Internal quotation marks omitted.) The court found that the testimony of the business manager for the borough "confirmed that Valley Tree was hired directly by the borough." (Internal quotation marks omitted.) The court also relied on the deposition testimony of the owner of Valley Tree that he had received an e-mail or letter from the borough stating that the borough was hiring Valley Tree to remove the trees, that he understood that he was working for the borough, and that he did not receive any written approvals or directives from O & G.

Finally, in rejecting the plaintiffs' claim that O & G had a duty by virtue of its obligation to provide a safe work environment under the contract, the court stated: "Although the contract provides a clear duty for certain aspects of safety during the term of the [high school renovation] project and within the scope of the project and the site, this duty is defined by the contract and the site plan drawings. . . . The plaintiffs have expanded th[e] safety aspects of the work to include work outside of the physical boundaries of the proposed project and oversight which is not clearly set forth in the contract language." (Citation omitted.) The court, thus, found that the plaintiffs "espouse[d] an incorrect interpretation of [the deposition] testimony and the safety responsibilities of O & G." Ultimately, the court concluded that there was nothing in the contract that required O & G to "inspect the equipment or procedures for contractors that were hired by the building committee to do work outside of the site, contract and [certain safety] proposals [submitted by O & G in its bid for the work]."

We conclude that the court's determination that the contract between O & G and the borough did not give rise to a duty owed by O & G to Valley Tree and its employees was legally and logically correct and supported by the language of the contract. After thoroughly examining the provisions of the contract, we agree with the court that they are "clear and unambiguous in the description, the extent of the project, and the work for which O & G [had] the duty to perform." Consequently, the court correctly determined that they simply did not support the plaintiffs' claims or suggested interpretation.

Because O & G, as the party moving for summary judgment, met its burden of proving the absence of any genuine issue of material fact as to the issue of whether the contract created a duty owed by O & G to Ortega, it was incumbent on the plaintiffs to present evidence demonstrating the existence of a disputed issue of material fact. See *Belevich* v. *Renaissance I, LLC*, supra, 207 Conn. App. 124. The court, however, found that the

plaintiffs, in their opposition to the motion for summary judgment, did not submit any admissible evidence demonstrating that O & G's responsibilities under the contract extended to the tree removal work. We agree with the court's determination. The plaintiffs' reliance on the representations made by O & G in its bid, which was incorporated into the contract, to create a duty by O & G for the tree removal work is misplaced, as those representations related to O & G's responsibilities for work done within the area included in the renovation project, and the tree removal work occurred in an area that was not within the scope of the project covered by the contract, nor does the contractual language designate the tree removal work as part of O & G's management duties.

The plaintiffs alternatively argue that O & G, through its actions, assumed a voluntary duty of care to Ortega. Specifically, the plaintiffs argue that O & G's actions gave rise to a common-law duty to ensure safe workplace practices and that the court erred in failing to address the existence of such a common-law duty. According to the plaintiffs, "O & G took upon itself to control and direct Valley Tree's work, and as a consequence thereof, owed a duty to Ortega."[3] Moreover, the plaintiffs claim that the court, in finding no duty, improperly decided issues of disputed fact. Specifically, they argue that because questions of fact existed as to the extent of O & G's control over Valley Tree, the motion for summary judgment should have been denied. We disagree.

In its memorandum of decision, the court found that, "[a]t the request of the building committee . . . Vetro . . . [O & G's] project director, contacted the two tree removal companies that were designated by the building committee as possible contractors for the proposals." As the court explained, when Vetro "walked the site with the contractors, Vetro simply showed the trees that had been flagged by the [two members of the building committee] . . . ." The court, therefore, rejected the plaintiffs' claim that "Vetro's actions of contacting the two companies for the tree removal bids, walking the site with the contractors and board members to designate the trees flagged for removal, and taking the bid documents back to the building committee extended the contractual work to be completed and the project area to include the tree removal within its responsibilities pursuant to the contract." Specifically, the court found that the plaintiffs' claim "ignore[d] the provisions in the contract [that] allow changes to work and responsibility," which outline a method for change to the original work set forth in the contract documents. Without any change orders or amendments to the contract, the court found that "[t]here [was] no evidence that the minor assistance provided by the construction manager was significant to change the terms of the contract," and that the plaintiffs were attempting to

create a duty where none existed.

Although the court did not expressly reference whether a common-law duty existed, the court did address the substance of the plaintiffs' claim, namely, whether O & G exercised control over the work performed by Valley Tree and its employees sufficient to give rise to a duty of care owed to Valley Tree. The court explained that, the fact that Valley Tree was to coordinate its work with Vetro "did not involve O & G dictating to Valley Tree how, when, or where to do their work, but it was a simple coordination with O & G so the work would be completed before the fencing was installed by O & G. . . . O & G was still the overall general contractor and any work being done would have to be coordinated with them." (Citations omitted.) In rejecting the plaintiffs' claim that, because Valley Tree interacted with Vetro only to schedule the work, O & G was responsible to inspect and oversee that work, the court stated: "O & G never relayed to Valley Tree that O & G was to be the final authority and controller for the work to be done by Valley Tree. The plaintiffs . . . in their opposition to the motion . . . [do] not include any admissible evidence placing O & G in charge of the tree removal project. . . . In fact, in performing the work it was clear that Valley Tree decided the location for its equipment, the work decisions for the brush to be cut, the trees that would get cut, how big the logs would be, what the order of tree removal would be, and the pulling back of brush to locate machinery. . . . None of these decisions were made by O & G and none were conveyed to Valley Tree by the construction manager. . . . Coordination of the various subcontractors does not create a responsibility for O & G to check the equipment for safety issues or to provide other safety amenities to the workers at Valley Tree. There is no contractual provision requiring that O & G coordinate or control the work of a contractor hired outside the parameters of the original contract.[4] The interpretation of the construction site limits and the work responsibilities of O & G does not support the plaintiffs' expansive interpretation of the contract." (Citations omitted; footnote added; footnote omitted.)

We agree with the court's analysis of this argument, which is supported by the record viewed in a light most favorable to the plaintiffs. On the basis of our review of the record, we conclude that the trial court properly determined that, in opposing the motion for summary judgment, the plaintiffs failed to present any evidence of conduct on the part of O & G demonstrating that O & G was in charge of the project to remove the trees or in any way directed the activities of the employees of Valley Tree. The plaintiffs, therefore, failed to meet their burden of demonstrating the existence of a genuine issue of material fact as to whether O & G controlled the work of Valley Tree and its employees, thereby giving rise to a duty of care owed to Ortega.[5] See *Shukis*

v. *Board of Education*, 122 Conn. App. 555, 566, 1 A.3d 137 (2010) ("[a] party opposing a motion for summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue" (internal quotation marks omitted)).

On the basis of our thorough review of the record, we conclude that the court's determination, as a matter of law, that O & G did not owe a duty to Ortega concerning the safety issues raised in count four of the revised complaint was legally and logically correct. Accordingly, because the existence of a duty is an essential element of a negligence cause of action; see *Goody* v. *Bedard*, supra, 200 Conn. App. 631; the court properly granted O & G's motion for summary judgment as to count four of the revised complaint.

Finally, the plaintiffs claim that the court improperly rendered summary judgment in favor of O & G with respect to the loss of consortium claim alleged in count five of the revised complaint. Because the loss of consortium claim in count five is derivative of the negligence claim alleged in count four, on which the court properly rendered summary judgment in favor of O & G, the loss of consortium claim in count five necessarily must fail. Therefore, the court properly granted O & G's motion for summary judgment as to count five of the revised complaint as well.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In the original complaint, Coronel also alleged claims as parent and natural guardian of her three minor children with Ortega for loss of parental consortium. After motions to strike those counts were filed, the plaintiffs did not object and agreed to withdraw the claims.

[2] In the proposal, O & G made the following representations: O & G's field "team will coordinate the efforts of all of the trade contractors and maintain a safe and secure worksite that does not disrupt the educational process of the Naugatuck High School"; "[i]t is our intent to deliver this project assuring a safe environment for all and with minimal disturbance to the educational function of the building"; "[w]e expect zero accidents and injuries on all of our projects [and] [a]ll of our safety planning is based upon this goal, and we actively encourage all workers on the site to participate and follow the safety guidelines"; "[e]veryone involved with O & G is responsible for preserving health and safety [and] [t]he success of this safety program depends on the full participation of every employee, subcontractor, manager and vendor"; and the project manager for O & G will "[c]oordinate and monitor safety and security programs as conditions dictate."

[3] Specifically, the plaintiffs claim that "O & G directed Valley Tree's work in the following ways: [1] O & G told Valley Tree it was in charge of the overall high school project, as well as Valley Tree's piece of that project . . . [and] never disclaimed supervision; [2] O & G contacted Valley Tree to submit a bid and communicated with Valley Tree's principal during the bidding process; [3] O & G directed when Valley Tree should start its work and when the tree removal work had to be completed; [4] O & G directed Valley Tree as to which trees were to be removed and which trees were to remain; [5] O & G instructed Valley Tree how to dispose of the trees—by chipping them—and then to leave the chips in the surrounding woods; [and] [6] Vetro visited the upper parking lot on at least one occasion to compliment Valley Tree's work." According to the plaintiffs, those facts were consistent with a statement made by O & G in its proposal that it would "coordinate the efforts of all of the trade contractors and maintain a safe and secure worksite." (Internal quotation marks omitted.) The plaintiffs' claim, how-

ever, ignores the fact that the representation made by O & G in its proposal related solely to the work and area within the scope of the renovation project.

[4] The plaintiffs argue on appeal that their claim should not be limited to the geographic reach or precise terms of the contract because there is evidence that O & G did work outside the area of the renovation project and, at times, did work without requesting a change order. Specifically, they argue that O & G worked outside the construction limit line to install fencing and curbing near the upper parking lot area and, thereby, voluntarily assumed a duty of care over Valley Tree and its employees. We are not persuaded. The plaintiffs have presented no evidence demonstrating how O & G's work installing the fencing and curbing gave rise to a duty of care to Valley Tree and its employees for the work they performed in the upper parking lot. The fact that O & G did some work outside of the scope of the work set forth in the contract does not raise a genuine issue of material fact that it thereby voluntarily assumed a duty to Valley Tree or Ortega, especially in the absence of evidence that O & G exercised control over the work of Valley Tree and its employees, and that the outside work performed by O & G did not occur in the upper parking lot and was unrelated to the tree removal work for which Valley Tree was hired directly by the borough. Thus, even if, as claimed by the plaintiffs, O & G's responsibilities were not solely limited to those outlined in the contract, it was still incumbent on the plaintiffs to present some evidence demonstrating how the work performed by O & G outside of the contract gave rise to a duty of care to Valley Tree and its employees. Our review of the record simply does not support the plaintiffs' contention that there is a genuine issue of material fact that O & G assumed a duty to Valley Tree and its employees for the tree removal work in the upper parking lot.

[5] The plaintiffs' reliance on *Pelletier* v. *Sordoni/Skanska Construction Co.*, 264 Conn. 509, 825 A.2d 72 (2003), and *Van Nesse* v. *Tomaszewski*, 265 Conn. 627, 829 A.2d 836 (2003), is misplaced, as those cases are distinguishable from the present case. In *Pelletier*, our Supreme Court held that, although, as a general rule, "a general contractor is not liable for the torts of its independent subcontractors"; *Pelletier* v. *Sordoni/Skanska Construction Co.*, supra, 518; there are exceptions to that general rule, including when the general contractor "in the progress of the work assume[s] control or interfere[s] with the work" of the subcontractor. Id. Control means the "[p]ower or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee." Black's Law Dictionary (6th Ed. 1990) p. 329. *Pelletier* and *Van Nesse* both involved actions by an injured employee of a subcontractor against the general contractor. *Van Nesse* v. *Tomaszewski*, supra, 628; *Pelletier* v. *Sordoni/Skanska Construction Co.*, supra, 512–13. In *Pelletier*, our Supreme Court rejected the plaintiff's claim that the contract between the general contractor and the owner of the building under construction, which charged the general contractor with certain safety and inspection responsibilities, created a duty owed by the general contractor to the plaintiff, concluding that the plaintiff was not a party to that agreement. *Pelletier* v. *Sordoni/Skanska Construction Co.*, supra, 530–31. In the present case, a general contractor-subcontractor relationship did not exist between O & G and Valley Tree, as the record demonstrated that Valley Tree was hired directly by the borough to do tree removal work, which was outside the scope and area covered by the contract between O & G and the borough for the high school renovation project, nor was Valley Tree a party to that contract. Moreover, the plaintiffs did not present any evidence in opposition to the motion for summary judgment showing that O & G had the authority to control, or interfered with, the work of Valley Tree.